RECEIVED
IN LAKE CHARLES, LA.
AUG 24 2012
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LAURA HARRIS WINFORD | : | DOCKET NO. 2:12CV 322 |
| VS. | : | JUDGE MINALDI |
| UNITED STATES OF AMERICA | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [Doc. 5], filed by the defendant, the United States of America. The Motion is opposed by the plaintiff, Laura Harris Winford [Doc. 9]. The United States filed a Reply to Winford's Memorandum in Opposition [Doc. 10]. For the reasons stated herein, the motion will be DENIED.

## BACKGROUND

Winford is one of three executors of the Estate of Laura McEldowney Bishop, who died on October 29, 2002.[1] Under the Internal Revenue Code, the Estate's deadline to file an estate tax return was originally set to expire nine months after Bishop's death, on July 29, 2003. *See* I.R.C. § 6075. Winford alleges that because of ongoing litigation concerning the executors' authority to administer the Estate, they were unable to gather the information necessary to prepare a return by that date.[2] Accordingly, at some point in July 2003, the Estate requested a

---

[1] Compl. ¶¶ 6,21 [Doc. 1].

[2] *Id.* ¶ 18.

six month extension under I.R.C. § 6081(a), which extended the estate's deadline to file a return until January 29, 2004.[3].

Along with its Application for Extension of Time to File a Return, the Estate sent the Internal Revenue Service (IRS) $230,884.00.[4] Winford alleges that the Estate did not intend the funds to act as a payment of the estimated taxes owed by the Estate.[5] Rather, she avers that the Estate merely intended to deposit the funds with the IRS in order to prevent the imposition of penalties and interest.[6] The Estate did not, however, explicitly designate the funds as a "deposit."[7]

Because the state court litigation concerning the Estate continued through 2008, the Estate did not file its Form 706 federal estate tax return until June 12, 2009.[8] The return showed a tax liability of $94,598.[9] The Estate also claimed a credit of $136,286.00, which was the amount by which the July 2003 payment exceeded the Estate's liability.[10] The IRS did not dispute the amount of the Estate's tax liability but disallowed the credit as untimely claimed.[11] The Estate then filed this suit to obtain the $136,286 it paid in 2003.[12]

---

[3] *Id.*

[4] *Id.* ¶ 19.

[5] *Id.* ¶¶ 19, 37.

[6] *Id.*

[7] *Id.* ¶ 30.

[8] *Id.* ¶ 23

[9] *Id.*

[10] *Id.*

[11] *Id.* ¶ 24.

[12] *Id.* ¶ 39.

## 12(b)(1) STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the court. Fed. R. Civ. P. 12(b)(1). The court may dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)).

On a Rule 12(b)(1) motion, the court is empowered to consider matters of fact which may be in dispute. *Id.* (citing *Williamson*, 645 F.2d at 413). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

## ANALYSIS

Sovereign immunity protects the United States from suit except insofar as Congress has expressly waived that immunity. *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006). "A waiver must be unequivocally expressed in statutory text" and must be strictly construed in favor of the sovereign. *Lundeen v. Mineta*, 291 F.3d 300, 304 (5th Cir. 2002). As a result, "no suit may be maintained against the United States unless the suit is brought in exact compliance with the terms of a statute under which the sovereign has consented to be sued." *Id.*

Sovereign immunity, when it applies, deprives federal courts of their jurisdiction. *Lundeen v. Mineta*, 291 F.3d 300, 304 (5th Cir. 2002). The burden falls on the party asserting federal jurisdiction to show that sovereign immunity has been waived. *See id.*

26 U.S.C. §§ 7422(a) and 6511(a) and (b) define the scope of the waiver of sovereign immunity for tax refund cases. *See United States v. Dalm*, 494 U.S. 596, 601-02 (1990). Section 7422(a) provides that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary." In order to be "duly filed," a claim must comply with the limitations set forth in I.R.C. § 6511.

Section 6511 contains two provisions for determining the timeliness of a refund claim: a filing deadline and a look-back period. Section 6511(a) provides that if the taxpayer files a return, he or she must file a claim for refund within three years from the time the return was filed or, two years from the time the tax was paid, whichever period expires later. I.R.C. § 6511(a). The Estate satisfied this filing deadline by filing its refund request at the same time it filed its return on June 12, 2009.

The look-back period determines the scope of a timely filed refund claim. Where the taxpayer files a refund claim within three years of filing a return, section 6511(b) limits the amount of the refund to the portion of the tax paid during the "look-back period", that is, the three years (plus the period of any extension obtained for filing the return) immediately preceding the filing of the claim. *Id.* § 6511(b).

According to the United States, section 6511(b) bars the Estate from recovering any portion of the $230,884 it sent to the IRS in July of 2003. Because the Estate did not file its request for repayment until June 12, 2009, section 6511(b) prohibits it from obtaining a refund of

any taxes paid before December 12, 2005. The United States maintains that the $230,884 the Estate sent to the IRS in July 2003 constituted a "payment of taxes" made prior to December 12, 2005, and accordingly, section 6511(b) precludes this court from entertaining a suit to reclaim any portion of it.

Winford, on the other hand, argues that the Estate's July 2003 remittance was not a "payment of taxes" to which section 6511 applies. Rather, she argues that the Estate merely intended to deposit the money with the IRS to avoid incurring penalties and interest. Because there is no limitations period for obtaining a refund of money deposited with the IRS, she argues that the estate's July 12, 2009 request for a return of the funds was timely.

The distinction between a "payment of taxes" and a "deposit" derives from the Supreme Court's decision in *Rosenmen v. United States*, 323 U.S. 658 (1944). In that case, as in the present case, the executors of an estate sought repayment of funds they remitted to the IRS before filing an estate tax return. 323 U.S. at 659. The executors specified in a transmittal letter they sent with the remittance that they submitted the funds "under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due." *Id.* at 660. The IRS placed the funds into a suspense account to the credit of the estate. *Id.*

The Court rejected the IRS's argument that the remittance constituted a "payment of taxes" which could not be refunded outside of the limitations period set forth in the predecessor to the present-day section 6511. *Id.* at 663. It noted that in making the payment, the "taxpayer did not discharge what he deemed to be a liability nor pay one that was asserted. *Id.* at 662. Rather, it held that under the circumstances, the remittance was "merely an interim arrangement to cover whatever contingencies the future might define." *Id.* Courts have since

interpreted *Rosenman* to create a "facts and circumstances test" for distinguishing between payments and deposits. *Deaton v. C.I.R.*, 440 F.3d 223, 228 (2006).

The United States urges this court to adopt a *per se* rule that any remittance made along with a request for an extension to file a tax return will be deemed a payment rather than a deposit. In *Deaton,* the Fifth Circuit declined to decide whether such a rule should apply, as the facts and circumstances of that case clearly indicated that the funds the taxpayers remitted along with their request for an extension of time to file a return constituted a payment rather than a deposit.[13] 440 F.3d at 232. It noted, however, that a number of its sister circuits have adopted a *per se* rule. *Id.*(citing *Dantzler v. United States*, 183 F.3d 1247, 1251 (11th Cir.1999); *Ertman v. United States*, 165 F.3d 204, 207 (2d Cir.1999); *Ott v. United States*, 141 F.3d 1306, 1308-09 (9th Cir.1998); *Gabelman v. Comm'r,* 86 F.3d 609, 611-12 (6th Cir.1996); *Weigand v. United States*, 760 F.2d 1072, 1074 (10th Cir.1985)).

This court finds that a *per se* rule should not apply in this case. Each of the cases in which courts have adopted a *per se* rule concerning the treatment of found remittances accompanying a request for an extension of time to file a tax return have dealt with payments accompanying Form 4868 Applications for Automatic Extensions of Time to File Individual *Income* Tax Returns. In ruling that such remittances constitute "payments" as a matter of law, these courts each relied on I.R.C.§ 6513(b)(2), which provides that "[a]ny amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return." *See Dantzler*, 183 F.3d at 1250-51; *Ertmsn,* 165 F.3d at 207; *Ott,* 141 F.3d at 1309-

---

[13] The taxpayers in *Deaton* indicated on their form requesting a refund that the accompanying remittance matched their estimated tax liability less withholdings. *Id.* The court also noted that the IRS had treated the remittance as an "excess collection" since it was filed and that the taxpayers made no effort to comply with the procedures for designating a remittance as a deposit.

6

10; *Gabelman*, 86 F.3d 609, 612 ; *Weigand*, 760 F.2d at 1074. They reasoned that because the applicable regulations required taxpayers to submit an "estimated income tax payment" along with their Form 4868 Application for Automatic Extension of Time to File an Individual Income Tax Return, and because section 6513(b)(2) specifically provides that a remittance of estimated income taxes constitutes a "payment," any remittance filed with a Form 4868 application. *See e.g. Dantzler*, 183 F.3d at 1251.

This case, by contrast, involves a remittance accompanying a Form 4768 Application for an Extension of Time to File an *Estate* Tax Return. Because such a remittance could not be characterized as an "estimated *income* tax payment", section 6513(b)(2) does not apply. Accordingly, this court concludes that there is no basis for adopting a *per se* rule that funds accompanying an application to extend a deadline to file an estate tax return constitute "payments" of the estate tax as a matter of law.

Neither can the court determine at this stage that the Estate's July 2003 remittance was a "payment" rather than a deposit under the particular facts and circumstances of this case. Courts have considered a number of different factors in determining whether to treat a remittance as a payment or a deposit, including the intent of the taxpayer, the IRS's treatment of the funds, and whether the amount of funds remitted constituted a good faith estimate of the tax potentially owed or whether it was merely arbitrary. *See Deaton*, 440 F.3d 223, 232; *Huskins v. United States*, 75 Fed. Cl. 659 (2007); *Blom v. United States*, No. 05-2383, 2006 WL 1517393 at *3 (E.D. Pa. May 31, 2006)..

Winford has alleged that the Estate intended the funds to act as a deposit submitted "solely for the purposes of preventing the accrual and/or imposition of penalties and interest" and

7

that it did not designate the remittance as a "payment" on its Form 4768 application.[14] Furthermore, while the complaint contains no allegations concerning how the Estate determined the amount of funds to deposit, Winford does allege that the amount of the remittance was necessarily arbitrary because the executors did not possess authority to gather the estate's assets and assess their value and could not predict the Estate's future litigation expenses.[15] The complaint also contains no allegations concerning the IRS's treatment of the funds; however, even if the IRS treated the funds as a payment, this factor is not, on its own, determinative. *Blom*, 2006 WL 1517393 at *3. In sum, this court cannot conclude, based on the allegations of the complaint, that there exists no set of facts under which the remittance could be properly characterized as a "deposit." Accordingly, it is ORDERED that the Motion to Dismiss is DENIED.

Lake Charles, Louisiana, this **23** day of **August** 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[14] Compl. ¶ 30.

[15] *Id.* ¶ 37.